### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| U.S. SYNTHETIC CORPORATION,<br><br>        **Plaintiff,**<br><br>vs.<br><br>REEDHYCALOG, LTD.,<br><br>        **Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No.  2:05CV247DAK** |

This matter is before the court on Defendant ReedHycalog, Ltd.'s Motion to Dismiss Plaintiff U.S. Synthetic Corporation's ("USS") declaratory judgment action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure asserting that there was no objectively reasonable threat of a patent infringement suit when USS filed the action.  The court held a hearing on the motion on November 17, 2005.  At the hearing, Plaintiff was represented by Richard D. Burbidge, and Defendant was represented by Brent O. Hatch.  The court took the motion under advisement.  The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, as well as the facts and law relating to this matter.  Being fully advised, the court renders the following Memorandum Decision and Order.

### BACKGROUND

USS manufactures synthetic polycrystalline diamond compacts ("PDC Inserts") that are used by drill bit manufacturers as "cutters" for drill bits in the oil and gas industry.  ReedHycalog manufactures drill bits which contain PDC Inserts as components.  ReedHycalog

manufactures its own PDC Inserts.  ReedHycalog, therefore, is a direct competitor with USS customers and an indirect competitor with USS.  ReedHycalog is the owner by assignment of U.S. Patent Nos. 6,544,308; 6,562,462; 6,585,064; 6,589,640; 6,592,985; 6,592,985; 6,601,662; 6,739,214; 6,749,033; 6,797,326; 6,861,098; and 6,861,137, which relate to the processes used in its business.

On September 27, 2004, John Deane, ReedHycalog's President, had a telephone conversation with Louis Pope, President of USS.  Deane told Pope that he had the impression from previous conversations that USS was not honoring ReedHycalog's leaching patents.  Pope responded that USS did not believe that the patents were valid, but had made the decision to honor the patents and not violate any of ReedHycalog's claims.  Deane stated that he would speak with ReedHycalog's attorney about whether the attorney may want something in writing. Deane further stated that he had seen some leached material in the field and that two other competitors had both promised him that it was not their material.  Pope believed that this comment implied that if the leached materials were USS's, then USS was infringing ReedHycalog's patents.

On December 3, 2004, Deane sent a letter to four companies in the business of manufacturing and selling diamond cutters, one of which was USS.  The letter informed them of the existence of a number of patents.  The letters also stated that the United States Patent and Trademark Office had allowed claims on three pending patent applications.  The letter contained the first allowed claim of each of the pending, but not yet issued, patents.  On March 1, 2005, U.S. Patent Nos. 6,861,098 and 6,861,137 were issued by the United States Patent and Trademark Office.  These patents corresponded to two of the three patents referred to in Deane's letters as having allowed claims but not having issued as of the date of the letters.

On March 3, 2005, Pope learned from USS's Vice President of Sales, Robert Johnson, that he had heard that ReedHycalog was preparing to file a lawsuit against USS for patent infringement.  On March, 8, 2005, Pope called Deane and told Deane that he had heard ReedHycalog was preparing to file a lawsuit against USS and asked if it was true.  Deane refused to confirm or deny that such a lawsuit was being prepared.  Deane, however, told Pope that ReedHycalog's patents were its "crown jewels" and it would defend them vigorously.   Deane also stated that the patents speak for themselves and USS could not expect an interpretation of the patents from ReedHycalog.  Deane, however, stated that he knew that USS was leaching and it would be very difficult to leach and not violate the patents.  During the conversation, Deane also asked Pope if USS had indemnified its customers because many of ReedHycalog's patents were bit patents and he stated that USS customers would likely be receiving letters from ReedHycalog concerning the patents.

On March 22, 2005, USS filed its complaint against ReedHycalog, which it then amended on April 1, 2005.  ReedHycalog has not filed any infringement lawsuits with respect to any of the patents listed in the December 3, 2004 letter to USS.  One of USS's customers, however, has filed a declaratory judgment action against ReedHycalog in this district based on ReedHycalog's letter and conduct.

## DISCUSSION

### ReedHycalog's Motion to Dismiss

ReedHycalog argues that because there was no objectively reasonable threat of legal action against USS when it filed this action, there is no subject matter jurisdiction for USS's declaratory judgment action pursuant to 28 U.S.C. § 2201(a).  Section 2201(a) allows a court to exercise jurisdiction over a declaratory judgment action where there is an "actual controversy."

*Intellectual Property Development Inc. v. TCI Cablevisions of Cal., Inc.*, 248 F.3d 1333, 1340 (Fed. Cir. 2001), *cert. denied*, 534 U.S. 895 (2001).

The burden of proving that an actual controversy exists is on the party seeking the declaratory judgment. *Intellectual Property Development, Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1340 (Fed. Cir. 2001), *cert. denied*, 534 U.S. 895 (2001). When determining a motion to dismiss under Rule 12(b)(1), the court may consider not only the complaint itself, but also affidavits, deposition testimony, and other materials outside the complaint. *United States v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n.5 (10th Cir. 1999).

Courts apply a two-part test to determine whether an "actual controversy" exists. First, the declaratory judgment plaintiff must prove that it has a "reasonable apprehension" of legal action by the patent holder if it continues its allegedly infringing activity. Second, the plaintiff must prove that it has actually produced or is prepared to produce the allegedly infringing product. *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 1093 (1996). This test is objective and is applied to the facts that existed at the time the lawsuit was filed. *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988).

Because ReedHycalog acknowledges that USS makes and sells potentially infringing products, the second part of the test is not at issue. The only issue is whether USS had an objectively reasonable apprehension that ReedHycalog would bring legal action against it for patent infringement at the time USS filed the present lawsuit.

### A. Reasonable Apprehension

Under the reasonable apprehension prong of the test, neither party claims that there was a direct threat of litigation. In the absence of a direct threat, the court examines the totality of the

circumstances to determine whether a reasonable apprehension of suit existed at the time the complaint was filed.  *Arrowhead*, 846 F.2d at 736.

USS contends that the totality of the circumstances demonstrates that ReedHycalog sent a letter directing USS's attention to the ReedHycalog patents, Deane stated that it would be very difficult for any company using a leaching process not to infringe on ReedHycalog's patents, Deane did not deny that ReedHycalog was preparing to file a lawsuit, and Deane stated that ReedHycalog would defend its patents vigorously.  Deane also inquired whether USS was indemnifying its customers, which USS asserts would be irrelevant unless ReedHycalog intended to sue for patent infringement.  Moreover, ReedHycalog does not deny that it contends that USS's products infringe on its patents.  Under these circumstances, USS asserts that its apprehension of an infringement action was reasonable.

ReedHycalog asserts that USS must show "more than the nervous state of mind of a possible infringer." *Phillips Plastics Corp. v. Kato Hatsujou Kabushniki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995).  ReedHycalog contends that USS fails to carry its burden of demonstrating that an actual controversy exists because the evidence it cites does not show conduct evidencing an intent to bring an infringement action.

Although USS lists the fact that ReedHycalog sent a letter to it informing it of its patents as part of the totality of circumstances giving rise to a threat of litigation, USS does not assert that any of the statements in the letter threatened litigation.  The only specific statements USS relies upon are those made by Deane during the March telephone conversation with Pope. However, USS does not appear to appreciate the fact that these statements were made by an individual being called fairly "out of the blue" by a competitor.  They were not composed in a letter to USS or the subject of a telephone call instigated by ReedHycalog.   In contrast to those

types of circumstances, they are statements that Deane was not allowed to contemplate and consider beforehand.   The fact that ReedHycalog never contacted USS other than the initial letter is significant to the court.  With that context in mind, the court will analyze each of the statements USS found threatening.

Statements that it would be difficult to use a leaching process without infringing the patents falls short of claiming infringement.  In *Fresenius USA, Inc v. Transonic Systems, Inc.*, 207 F. Supp. 2d 1009 (N.D. Cal. 2001), the court found no declaratory judgment jurisdiction when the patentee sent the plaintiff a letter claiming that its products infringed certain patents because, as the court found, the letter was seeking to open a dialogue between the parties rather than to claim impending victory in a lawsuit.  The statement in this case – that it would be difficult to use a leaching process and not infringe the patent – appears to leave open the ability to challenge it.  Therefore, the court concludes that this statement is akin to the opening of a dialogue on the issue and it does not imply that a lawsuit is the next step.

In addition, the statement that ReedHycalog would vigorously enforce its patents does not mean that it intended to pursue litigation.  There are several means of enforcing patents, such as licenses.  In *Century Indus. v. Wenger Corp.*, 851 F. Supp. 1260, 1263-64 (S.D. Ind. 1994), the court found no apprehension of suit when the patentee's letter stated that plaintiff's conduct was within the scope of the patent and the patentee would fully enforce the patent.

The parties dispute whether this case is analogous to cases in which parties were negotiating licenses.  In *Solo Cup Co. v. Fort James Corp.*, 1999 U.S. Dist. LEXIS 18586 (N.D. Ill. 1999), the court dismissed a declaratory judgment action as premature where the parties had been negotiating the terms of a license and the plaintiff filed the action the same day it rejected the defendant's royalty demands.  USS asserts that in these case the parties were in the middle of

ongoing negotiations, whereas in this case there were no ongoing settlement negotiations and ReedHycalog could not have relied to its detriment that any such negotiations would continue. ReedHycalog, however, contends that the threat of lawsuit was even more diminished where there were no ongoing discussions or negotiations taking place when USS filed its lawsuit. The court finds the cases distinguishable because the parties' dialogue never appears to have even reached the negotiation phase.

Also, Deane's refusal to deny that ReedHycalog was preparing an infringement suit against USS does not give rise to an objectively reasonable apprehension of suit. *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996) ("No patent owner with any sense would open negotiations by assuring his opposite party that he does not intent to enforce his patent . . . . The threat of enforcement is the entire source of the patentee's bargaining power."). In *Shell Oil Corp v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992), the court dismissed a declaratory judgment action after the patentee, when asked if it intended to enforce its patent, responded "yes."

USS asserts that the Federal Circuit has made it clear that "a patentee's refusal to give assurances that it will not enforce its patents is relevant to the [reasonable apprehension] determination." *BP Chemicals. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993). In *Applexion S.A. v. Amalgamated Sugar Co.*, 1995 WL 229049 (N.D. Ill.), the court also opined that "an actual case or controversy does not require an express threat of litigation . . . all that is required are acts that create a reasonable apprehension of suit, which may include nothing more than acts of a patent holder indicating its intent to enforce its patent." *Id.* at *4. In *Applexion S.A.*, however, the patentee sent the plaintiff no less than six letters expressly claiming infringement. The fact that the defendant's counsel did not assure the plaintiff that it would not

be sued, therefore, is of little relevance and factually distinguishable from the instant case.

In *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 881 (Fed. Cir. 1983), the Federal Circuit held that the plaintiff had a reasonable apprehension of suit even though the defendant's president had signed an affidavit that defendant had "no intention" of suing for infringement. The court noted that the words in the affidavit were carefully chosen and stated only that on the facts presently known that he would not sue for infringement. In *C.R. Bard,* the patentee had already sued the licensee in state court for royalties when the licensee quit making payments. This suit demonstrated to the court that the licensee had an objectively reasonable apprehension of suit even though the patentee presented an affidavit stating that it had no intention of suing for infringement.

Jurisdiction does not arise simply because a patent holder communicates an intention to enforce a patent. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996). In *EMC Corp.*, the court found the language of the letter demonstrated that the defendant's management favored filing suit immediately and had been persuaded to hold off for a period of time necessary to seek a solution short of litigation. *Id.* In this case, there is no clear indication of intent to litigate on the part of ReedHycalog. ReedHycalog did not instigate the telephone conversation, USS did. Deane's statements were not contained in a tactical affidavit drafted to meet the dictates of the law. Deane was responding to a competitor's call. The court agrees with the cases finding that any smart business person would start negotiations with such a position. Given the context in which the statement was made, the court does not find it demonstrates an objective threat that the dispute would be resolved through litigation. ReedHycalog has not even clearly indicated to USS whether it believes USS actually infringes on ReedHycalog's patents.

Finally, USS relies on an alleged question Deane asked regarding whether USS was

indemnifying its customers.  In *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir. 1993), the court addressed this issue and determined that such statements did not amount to threats of suit and did not confer jurisdiction.  Deane stated that ReedHycalog would likely send letters to USS's customers.  Although letters were sent to other companies before the letter was sent to USS, the letters referenced in the March conversation do not appear to have been sent prior to USS's filing of the instant lawsuit.

Accordingly, the court concludes that USS should not have believed that an infringement suit was likely.  The letter sent by Deane to several companies was only a general communication letter informing the companies of the patents.  It did not demand a license agreement, did not mention infringement and did not threaten any kind of lawsuit.  In addition, Deane's statements do not directly allege infringement and do not demonstrate an intent to litigate as the only means of resolving the lawsuit.

### B.  Discretion

Even if the court had determined that USS had a reasonable apprehension of suit, the court could exercise its discretion and dismiss this action.  USS acknowledges that this court does have broad discretion whether to hear a declaratory judgment suit "as long as the district court acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration."  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996).  The Federal Circuit has held that even where there is both a reasonable apprehension of suit and the party has a present ability to commit the allegedly infringing act, dismissal is still justified where the parties are engaged in settlement discussions and there is a possibility that the dispute may be resolved without the need for legal action.  In *EMC Corp*, the Federal Circuit affirmed a district court's dismissal of a declaratory judgment action brought against a patentee

by one of its competitors despite finding that the plaintiff had satisfied both of the requirements needed to find the existence of an actual controversy under 28 U.S.C. § 2201(a).  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812 (Fed. Cir. 1996).   Even though the defendant had made it clear to plaintiff that it had already concluded that plaintiff infringed and would commence suit if negotiations did not lead to a satisfactory resolution, the court affirmed the district court's decision to decline jurisdiction, *inter alia*, on the grounds that there was still a possibility that the parties would settle the dispute on their own.  The court reasoned that it did not want to encourage parties to use declaratory judgment actions where permitting such actions would be "inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources."  *Id.* at 814.

    In this case, even if the court had found that some of the statements made by Deane gave USS a reasonable apprehension of being sued at the time it filed this action, the court would nevertheless exercise its discretion to dismiss this action so that the parties could engage in meaningful discussions or settlement discussions.  While courts look to whether the parties were engaged in negotiations, this is because negotiations are a factor in determining whether parties can resolve the issues on their own.  When the parties have yet to reach the point of entering into negotiations, however, it cannot be said that there is no prospect of a non-judicial resolution of the dispute.  Here, USS filed this suit well before ReedHycalog had any opportunity to assess its position with respect to approaching USS with a licensing offer.  In fact, ReedHycalog only sent one letter identifying its patents.  There is still a reasonable likelihood that the parties could resolve this outside of the courtroom and, as a result, the court would exercise its discretion to dismiss the suit.

**CONCLUSION**

For the foregoing reasons, ReedHycalog's Motion to Dismiss is GRANTED. This declaratory judgment action is dismissed for lack of jurisdiction, each party to bear its own costs and fees.

DATED this 9th day of December, 2005.

BY THE COURT:

DALE A. KIMBALL
United States District Judge